UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| JOHANNA L. EMEL, | : | CIVIL NO: 1:21-CV-00724 |
| | : | |
| Plaintiff, | : | (Magistrate Judge Schwab) |
| | : | |
| v. | : | |
| | : | |
| KILOLO KIJAKAZI,[1] Acting | : | |
| Commissioner of Social Security, | : | |
| | : | |
| Defendant. | : | |

## MEMORANDUM OPINION

## I.  Introduction.

This is a social security action brought under 42 U.S.C. § 405(g).  The

plaintiff, Johanna L. Emel ("Emel"), seeks judicial review of the final decision of

the Commissioner of Social Security ("Commissioner") denying her claims for

supplemental security income under Title XVI of the Social Security Act.  We

have jurisdiction under 42 U.S.C. §§ 405(g) and 1383(c)(3).  For the reasons set

---

[1] Kilolo Kijakazi is now the Acting Commissioner of Social Security, and
she is automatically substituted as the defendant in this action. *See* Fed. R. Civ. P.
25(d) (providing that when a public officer sued in his or her official capacity
ceases to hold office while the action is pending, "[t]he officer's successor is
automatically substituted as a party"); 42 U.S.C. § 405(g) ("Any action instituted
in accordance with this subsection shall survive notwithstanding any change in the
person occupying the office of Commissioner of Social Security or any vacancy in
such office.").

forth below, the Commissioner's decision will be affirmed, and judgment will be entered in favor of the Commissioner.

## II. Background and Procedural History.

We refer to the transcript provided by the Commissioner. *See docs. 16-1 to 16-7.*[2]  On December 20, 2018, Emel protectively filed[3] an application[4] for supplemental security income. *Admin. Tr.* at 16–17.  After the Commissioner denied her claim at the initial level of administrative review, *id.* at 98, Emel requested an administrative hearing. *Id.* at 103–05.  Accordingly, on March 12, 2020, a hearing was held before Administrative Law Judge ("ALJ") Therese Hardiman, with Emel represented by William Steppacher, Jr. ("Steppacher"). *Id.* at

---

[2] Because the facts of this case are well known to the parties, we do not repeat them here in detail.  Instead, we recite only those facts that bear on Emel's claims.

[3] "Protective filing is a term for the first time an individual contacts the Social Security Administration to file a claim for benefits." *Stitzel v. Berryhill*, No. 3:16-CV-0391, 2017 WL 5559918, at *1 n.3 (M.D. Pa. Nov. 9, 2017).  "A protective filing date allows an individual to have an earlier application date than the date the application is actually signed." *Id.*  Here, Emel filed her application for benefits on January 8, 2019. *See Admin. Tr.* at 172.  But the ALJ identifies December 20, 2018, as the date that the application for benefits was protectively filed. *Id.* at 21, 22, 36.

[4] This is not Emel's first application for benefits.  Emel was previously denied at the initial level of administrative review on July 3, 2003, and December 17, 2009. *Admin. Tr.* at 21–22.  Additionally, Emel was previously denied benefits after hearings on September 22, 2011, March 10, 2014, and October 31, 2018. *Id.*

38. At this hearing, Emel testified, along with vocational expert ("VE") Patricia Chilleri. *Id.* at 38–60.

The ALJ determined that Emel was not disabled and therefore denied Emel benefits. *Id.* at 31. Emel appealed the ALJ's decision to the Appeals Council, which denied her request for review on February 23, 2021. *Id.* at 1–4. This makes the ALJ's decision the final decision of the Commissioner subject to judicial review by this Court. In April 2021, Emel began this action by filing a complaint claiming that the Commissioner's decision is not supported by substantial evidence. *Doc. 1-1.*

The parties consented to proceed before a magistrate judge pursuant to 28 U.S.C. § 636(c), and the case was referred to the undersigned. *Doc. 10.* The Commissioner then filed an answer and a certified transcript of the administrative proceedings. *Doc. 15, 16.* The parties filed briefs and this matter is ripe for decision. *See doc. 17, 18.*

## III. Legal Standards.

### A. Substantial Evidence Review—the Role of This Court.

When reviewing the Commissioner's final decision denying a claimant's application for benefits, "the court has plenary review of all legal issues decided by the Commissioner." *Ficca v. Astrue*, 901 F.Supp.2d 533, 536 (M.D. Pa. 2012). But

the court's review of the Commissioner's factual findings is limited to whether substantial evidence supports those findings. *See* 42 U.S.C. § 405(g); *Biestek v. Berryhill*, 139 S. Ct. 1148, 1152 (2019).  "[T]he threshold for such evidentiary sufficiency is not high." *Biestek*, 139 S.Ct. at 1154.  Substantial evidence "means—and means only—'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Id.* (quoting *Consol. Edison Co. of New York v. N.L.R.B.*, 305 U.S. 197, 229 (1938)).

Substantial evidence "is less than a preponderance of the evidence but more than a mere scintilla." *Jesurum v. Sec'y U.S. Dep't Health & Human Servs.*, 48 F.3d 114, 117 (3d Cir. 1995).  A single piece of evidence is not substantial evidence if the ALJ ignores countervailing evidence or fails to resolve a conflict created by the evidence. *Mason v. Shalala*, 994 F.2d 1058, 1065 (3d Cir. 1993). But in an adequately developed factual record, substantial evidence may be "something less than the weight of the evidence, and the possibility of drawing two inconsistent conclusions from the evidence does not prevent [the ALJ's] finding from being supported by substantial evidence." *Consolo v. Fed. Maritime Comm'n*, 383 U.S. 607, 620 (1966).  "In determining if the Commissioner's decision is supported by substantial evidence the court must scrutinize the record as a whole." *Leslie v. Barnhart*, 304 F. Supp. 2d 623, 627 (M.D. Pa. 2003).

The question before this court, therefore, is not whether Emel was disabled, but whether substantial evidence supports the Commissioner's finding that she was not disabled and whether the Commissioner correctly applied the relevant law. 42 U.S.C § 1382c(a)(3)(A); 20 C.F.R. § 416.905(a).  To satisfy this requirement, a claimant must have a severe physical or mental impairment that makes it impossible to do his or her previous work or any other substantial gainful work that exists in the national economy. 42 U.S.C § 1382c(a)(3)(B); 20 C.F.R. § 416.905(a).

### B.  Initial Burdens of Proof, Persuasion, and Articulation for the ALJ.

To receive benefits under Title XVI of the Social Security Act, a claimant generally must demonstrate an inability "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." Unlike with disability insurance benefits under Title II of the Social Security Act, "[i]nsured status is irrelevant in determining a claimant's eligibility for supplemental security income benefits" under Title XVI of the Social Security Act. *Snyder v. Colvin*, No. 3:16-CV-01689, 2017 WL 1078330, at *1 (M.D. Pa. Mar. 22, 2017).  Supplemental Security Income "is a federal income supplement program funded by general tax

revenues (not social security taxes)" "designed to help aged, blind or other disabled individuals who have little or no income." *Id.*

The ALJ follows a five-step sequential-evaluation process to determine whether a claimant is disabled. 20 C.F.R. § 416.920.  Under this process, the ALJ must sequentially determine: (1) whether the claimant is engaged in substantial gainful activity; (2) whether the claimant has a severe impairment; (3) whether the claimant's impairment meets or equals a listed impairment; (4) whether the claimant is able to do his or her past relevant work; and (5) whether the claimant is able to do any other work, considering his or her age, education, work experience, and residual functional capacity ("RFC"). 20 C.F.R. § 416.920(a)(4)(i)–(v).

The ALJ must also assess a claimant's RFC at step four. *Hess v. Comm'r of Soc. Sec.*, 931 F.3d 198, 198 n.2 (3d Cir. 2019).  The RFC is "'that which an individual is still able to do despite the limitations caused by his or her impairment(s).'" *Burnett v. Comm'r of Soc. Sec.*, 220 F.3d 112, 121 (3d Cir. 2000) (quoting *Hartranft v. Apfel*, 181 F.3d 358, 359 n.1 (3d Cir. 1999)); *see also* 20 C.F.R. § 416.945(a)(1).  In making this assessment, the ALJ considers all the claimant's medically determinable impairments, including any non-severe impairment identified by the ALJ at step two of his or her analysis. 20 C.F.R. § 416.945(a)(2).

"The claimant bears the burden of proof at steps one through four" of the sequential-evaluation process. *Smith v. Comm'r of Soc. Sec.*, 631 F.3d 632, 634 (3d Cir. 2010). But at step five, "the burden of production shifts to the Commissioner, who must . . . show there are other jobs existing in significant numbers in the national economy which the claimant can perform, consistent with her medical impairments, age, education, past work experience, and residual functional capacity." *Fargnoli v. Massanari*, 247 F.3d 34, 39 (3d Cir. 2001).

The ALJ's disability determination must also meet certain basic substantive requisites. Most significantly, the ALJ must provide "a clear and satisfactory explication of the basis on which" his or her decision rests. *Cotter v. Harris*, 642 F.2d 700, 704 (3d Cir. 1981). "The ALJ must indicate in his decision which evidence he has rejected and which he is relying on as the basis for his finding." *Schaudeck v. Comm'r of Soc. Sec. Admin.*, 181 F.3d 429, 433 (3d Cir. 1999). The "ALJ may not reject pertinent or probative evidence without explanation." *Johnson v. Comm'r of Soc. Sec.*, 529 F.3d 198, 204 (3d Cir. 2008). Otherwise, "'the reviewing court cannot tell if significant probative evidence was not credited or simply ignored.'" *Burnett*, 220 F.3d at 121 (quoting *Cotter*, 642 F.2d at 705).

**IV.  The ALJ's Decision.**

On June 2, 2020, the ALJ denied Emel's claim for benefits. *Admin. Tr.* at

16–31.  At step one of the sequential-evaluation process, the ALJ found that Emel

had not engaged in substantial gainful activity since the date of her application for

benefits. *Id.* at 19–23.

At step two of the sequential-evaluation process, the ALJ found that Emel

has the following severe impairments: dextroscoliosis scoliosis and mild kyphotic

deformity. *Id.*

At step three of the sequential-evaluation process, the ALJ found that Emel

did not have an impairment or combination of impairments that met or medically

equaled an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. *Id*. at

24.

The ALJ then determined that Emel has the RFC to perform limited light

work. *Id.*  The ALJ found that Emel should not be required to do "more than

occasional climbing on stairs and ramps" and that she should never be required to

"climb[ ] [ ] ladders, ropes and scaffolds." *Id.*  The ALJ also prescribed only

"occasional balancing and stooping" and "no more than occasional bilateral

overhead reaching." *Id.*  The ALJ concluded that Emel would "need to avoid

concentrated levels of temperature extremes, humidity, vibrations, fumes and

hazards, defined as heights and moving machinery." *Id.*  Finally, the ALJ

determined that Emel "would be limited to unskilled work activity as defined by the Dictionary of Occupational Titles (DOT) that is low stress defined as occasional decisional making required and only occasional changes in the work setting." *Id.* In making this RFC assessment, the ALJ reviewed Emel's testimony, as well as the opinion evidence and treatment records in the record. *Id.* at 24–29.

At step four of the sequential-evaluation process, the ALJ found that Emel had no past relevant work. *Id.* at 30.

At step five of the sequential-evaluation process, considering Emel's age, education, work experience, and RFC, as well as the testimony of the VE, the ALJ found that Emel could perform jobs—such as counter clerk, production helper, and hand packager—that exist in significant numbers in the national economy. *Id.* at 30–31.

In sum, the ALJ concluded that Emel was not disabled. *Id.* at 31. Thus, she denied Emel's claims for benefits. *Id.*

## V. Discussion.

Emel claims that the ALJ failed to properly evaluate the medical evidence on the record and therefore the RFC assessment was incorrect. *Doc. 17.* The Commission argues that the ALJ's decision was supported by substantial evidence, as required by statute. *Doc. 18.*

According to Emel, the ALJ failed in three primary ways: (1) the ALJ improperly assessed the internal consistency of each medical opinion when deciding which medical opinion was persuasive; (2) the ALJ failed to adequately address Dr. Kline's medical opinion; and (3) the ALJ failed to adequately address Dr. Saltzgaber's medical opinion.[5]  Emel argues that these failures resulted in the ALJ's erroneous conclusion that neither Dr. Kline's nor Dr. Saltzgaber's medical opinions were persuasive.[6]  If the ALJ had concluded that these opinions were persuasive, the ALJ would then be required to "articulate how [she] considered the other most persuasive factors in [20 C.F.R. § 416.920c] (c)(3) through (c)(5) . . . for those medical opinions or prior administrative medical findings[.]" 20 C.F.R. §

---

[5] Emel also briefly argues that the ALJ erred by discussing the opinions of Dr. Kline and Dr. Saltzgaber "in isolation from each other." *Doc. 17* at 13–14 (emphasis omitted). Emel is correct that the regulations state "[t]he more consistent a medical opinion(s) or prior administrative medical finding(s) is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) or prior administrative medical finding(s) will be." 20 C.F.R. § 416.920c(c)(2).  However, the ALJ clearly demonstrates her awareness of both opinions and, though she does not explicitly compare them, she thoroughly explains their lack of consistency with the "record in its entirety[,]" along with other reasons why she finds neither opinion persuasive. *Admin. Tr.* at 28; *see also id.* at 29 (stating that Dr. Kline's opinion is not supported by the "record as a whole.").  We, therefore, do not discuss this argument further.

[6] For claims, like Emel's, filed on or after March 27, 2017, the regulations provide that the Commissioner "will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s), including those from [the claimant's] medical sources." 20 C.F.R. § 416.920c(a).  Rather than assigning weight to medical opinions, the Commissioner will articulate "how persuasive" he or she finds the medical opinions. 20 C.F.R. § 416.920c(b).

416.920c(b)(3).  Emel argues that, were the ALJ to have proceeded to this second

step, the factors would have led to the conclusion that Dr. Kline's and Dr.

Saltzgaber's medical opinions were the most persuasive, resulting in an RFC that,

combined with Emel's other characteristics, would have resulted in a finding that

Emel was disabled.[7] *Doc. 17* at 7–8.

For the reasons discussed below, we conclude that the ALJ erred in only one

respect—by omitting reference to Dr. Saltzgaber's observations of Emel's pain—

but such error was harmless.

### A.  The ALJ's analysis of the internal consistency of a medical opinion was not an improper substitution of the ALJ's lay opinion for a medical expert's opinion.

"The ALJ—not treating or examining physicians or State agency

consultants—must make the ultimate disability and RFC determinations."

*Chandler v. Comm'r of Soc. Sec.*, 667 F.3d 356, 361 (3d Cir. 2011).  The RFC is

"'that which an individual is still able to do despite the limitations caused by his or

her impairment(s).'" *Burnett*, 220 F.3d at 121 (quoting *Hartranft*, 181 F.3d at 359

n.1).  In assessing a claimant's RFC, the ALJ must consider all the evidence of

record. *Burnett*, 220 F.3d at 121.  "When a conflict in the evidence exists, the ALJ

---

[7] This argument directly contradicts the Commissioner's assertion that "Plaintiff has . . . not explained how any alleged error on the part of the ALJ should have led to a favorable decision granting her benefits." *Doc. 18* at 13.

may choose whom to credit but 'cannot reject evidence for no reason or for the wrong reason.'" *Plummer v. Apfel*, 186 F.3d 422, 429 (3d Cir. 1999) (quoting *Mason*, 994 F.2d at 1066). The court's "review of the ALJ's assessment of the plaintiff's RFC is deferential and that RFC assessment will not be set aside if it is supported by substantial evidence." *Wilder v. Kijakazi*, 1:20-CV-492, 2021 WL 4145056, at *6 (M.D. Pa. Sept. 9, 2021); *see also Burns v. Barnhart*, 312 F.3d 113, 129 (3d Cir. 2002) ("We examine the ALJ's conclusions as to [the claimant's] residual functional capacity with the deference required of the substantial evidence standard of review.").

"Surveying the medical evidence to craft an RFC is part of the ALJ's duties." *Titterington v. Barnhart*, 174 F. App'x 6, 11 (3d Cir. 2006). And "[i]n evaluating medical reports, the ALJ is free to choose the medial opinion of one doctor over that of another." *Diaz v. Comm'r of Soc. Sec.*, 577 F.3d 500, 505 (3d Cir. 2009). "The ALJ, however, should refrain from rejecting all medical opinions in favor of his or her own lay interpretation of the medical evidence." *Id.* (citing *Slotcabage v. Berryhill*, Civ. No. 18-1214, 2019 WL 2521634 at *11 (M.D. Pa. Jun. 3, 2019)).

Though Emel is correct that the ALJ assessed the internal consistency of the medical opinions, Emel incorrectly argues that such assessment was improper. Emel argues that by assessing the internal consistency of the medical opinions, the

12

ALJ was substituting her own lay interpretation of the medical evidence for the interpretation of medical experts. *Doc. 17* at 10–11.  On the contrary, on multiple occasions the Third Circuit has affirmed many decisions in which ALJs have assessed the internal consistency of the medical opinions before them. *See, e.g.*, *Bryson v. Comm'r of Soc. Sec.*, 639 Fed. App'x. 784, 787 (3d Cir. 2016) ("Here, the ALJ did not afford Dr. Salopek's opinion controlling weight[8] because it was not consistent with the medical evidence as a whole, *with Dr. Salopek's own treatment records*, or with Bryson's subjective complaints. . . . Nor did the ALJ improperly use his own medical judgment in making this determination." (emphasis added)); *Springer v. Comm's or Soc. Sec.*, No. 20-2861, 2021 WL 4796379, at *2 (3d Cir. Oct. 14, 2021) ("As required, the ALJ explained why she discounted Dr. Joseph's opinion, citing multiple reasons, including, *inter alia*, contradictory medical evidence and the lack of support in Dr. Joseph's own progress notes for his opinion that Springer is disabled." (citing *Zirnsak v. Colvin*, 777 F.3d 607, 614 (3d Cir. 2014))).

Most notably, in *Kibe*, the Third Circuit affirmed an ALJ's decision in which the ALJ "noted that the Doctor's own record did not support his conclusions" and denied benefits on this basis. *Kibe v. Comm'r of Soc. Sec.*, 787 Fed. App'x. 801,

---

[8] Though, as discussed above, *see supra, n.6*, the ALJ no longer gives evidence "controlling weight," we use examples in which ALJ's do use "weight" terminology to illustrate other points.

803 (3d Cir. 2019).  There, the ALJ "characterized [the claimant's] medical treatment as conservative and largely successful in managing his impairments . . . contradicting [the Doctor's] conclusions about [the claimant's] marked limitations." *Id.*  Similarly, in the instant case, the ALJ found that Dr. Kline's "longitudinal treatment records clearly do not support the severity of the limitations expressed in his medical source treatment[,]" and that the "routine" treatment Emel received from Dr. Kline "does not support the severity of Dr. Kline's opinion to a range of less than sedentary work." *Admin Tr.* at 29.  This conclusion falls well within the scope of the ALJ's duty to assess the persuasiveness of medical opinions.  The ALJ thus did not err by considering the internal consistency of Dr. Kline's medical opinion.

### B.  The ALJ adequately addressed Dr. Kline's medical opinion.

"Although we do not expect the ALJ to make reference to every relevant treatment note in a case where the claimant . . . has voluminous medical records, we do expect the ALJ, as the factfinder to consider and evaluate the medical evidence in the record consistent with his responsibilities under the regulations and case law." *Fargnoli*, 247 F.3d at 42.  "The ALJ must consider all the evidence and give some reason for discounting the evidence she rejects." *Plummer v. Apfel*, 186 F.3d 422, 429 (3d Cir. 1999).  Moreover, "[a]n ALJ cannot rely only on the

evidence that supports his or her conclusion, but also must explicitly weigh all relevant, probative, and available evidence; and provide some explanation for a rejection of probative evidence which would suggest a contrary disposition." *Gleason v. Colvin*, 152 F.Supp.3d 364, 386 (M.D. Pa. 2015).

After spending a page and a half listing Dr. Kline's findings, Emel states "[t]hese findings were overlooked by the ALJ[.]" *Doc. 17* at 13. The "findings" identified by Emel as overlooked include doctor-made medical conclusions and patient-reported complaints of pain. *Id.* The ALJ directly addressed many of the medical findings in her opinion,[9] proving that the ALJ did not, in fact, overlook these findings. The ALJ also directly addressed many patient-reported complaints of pain, while simultaneously making clear that subjective pain would not be sufficient to find disability. *See, e.g.*, *Admin. Tr.* at 20 ("Subjective complaints alone cannot establish the existence of a medically determinable impairment nor can they support the finding of disability without demonstrated medically acceptable signs or laboratory findings to support the same."). The ALJ's opinion, therefore, demonstrates that the ALJ was well aware of Emel's reported pain and these complaints were not overlooked.

The ALJ does not, however, explicitly cite the two occasions in which Dr. Kline reported that Emel was demonstrating "difficulty with mobility." *Admin. Tr.*

---

[9] *Compare Doc. 17* at 11–13 *with Admin. Tr.* at 22, 26–27.

at 357, 487.  However, we reiterate that the ALJ is not required "to make reference to every relevant treatment note in a case." *Fargnoli*, 247 F.3d at 42.  Though the ALJ does not use the term "mobility," she does refer to the treatment notes from these visits repeatedly, and discusses Emel's gait, range of motion, walking, and coordination. *Admin. Tr.* at 26–28.

It is clear, then, that the ALJ did not *overlook* the findings Emel outlined in her brief, but instead weighed them differently than Emel hoped.  However, "[i]n the process of reviewing the record for substantial evidence, we may not 'weigh the evidence or substitute [our own] conclusions for those of the fact-finder.'" *Rutherford v. Barnhart*, 399 F.3d 546, 552 (3d Cir. 2005) (quoting *Williams v. Sullivan*, 970 F.2d 1178, 1183 (3d Cir. 1992)).  In sum, the ALJ fulfilled her duty to evaluate Emel's contentions regarding her symptoms and limitations and weigh them against the entire record.  In doing so, the ALJ provided an explanation for finding Dr. Kline's opinion to be unpersuasive.  We thus conclude that the ALJ did not err when evaluating Dr. Kline's opinion.

### C.  The ALJ erred when she did not address Dr. Saltzgaber's observation that Emel was in acute distress in his office, but such error was harmless.

Emel also argues that the ALJ ignored certain findings when concluding that Dr. Saltzgaber's examination of Emel was "'essentially benign.'" *Doc. 17* at 11

16

(citing *Admin. Tr.* at 26).  Again, the ALJ overwhelmingly acknowledged a majority of the findings Emel identifies.

Emel argues that the ALJ ignored that Emel was, according to Dr. Saltzgaber's report, unable to "walk on heels or toes without difficulty and heel to toe walking was done minimally due to pain." *Doc. 17* at 11.  The ALJ, however, states "[Emel's] gait was normal[,]" addressing Emel's ability to walk during the physical evaluation with Dr. Saltzgaber. *Admin Tr.* at 26.  Emel also argues that the ALJ ignored specific numerical findings regarding Emel's lumbar spine and cervical spine. *Doc. 17* at 11.  Further, Emel complains that the ALJ did not acknowledge the *percentage* of a full squat she was able to perform during her appointment with Dr. Saltzgaber (*doc. 17* at 11), though the ALJ verbatim acknowledges the "reduced squat" in her decision (*Admin. Tr.* at 26).  But, as the ALJ is not required to "make reference to every treatment note[,]" *Fargnoli*, 247 F.3d at 42, she certainly is not required to specifically quote each treatment note in her opinion.  The ALJ demonstrates that she has analyzed these records by discussing them in her opinion. *Admin. Tr.* at 26.  It is thus clear that, on these matters, the ALJ "consider[ed] and evaluate[d] the medical evidence in the record consistent with [her] responsibilities under the regulations and case law." *Fargnoli*, 247 F.3d at 42 (3d Cir. 2001).

Finally, the ALJ seems to ignore Dr. Saltzgaber's observation that "[t]he claimant appeared to be in acute distress; uncomfortable sitting on [the] exam table." *Admin Tr.* at 327. Though this portion of the record indicates that Dr. Saltzgaber actually *observed* the claimant's pain during the examination, the ALJ instead repeatedly refers only to Emel's self-reported pain. *See Admin. Tr.* at 26, 28. The ALJ even states her conclusion that "it appears that [Dr. Saltzgaber] relied heavily on the subjective report of symptoms and limitations provided by the claimant." *Id.* at 28. The ALJ, therefore, did err when she did not address this medical finding. We thus proceed to harmless error review.

"Ordinary harmless error review, in which the appellant bears the burden to demonstrate harm, is applicable to administrative appeals." *Holloman v. Comm'r of Soc. Sec.*, 639 F. App'x 810, 814 (3d Cir. 2016). Thus, a claimant must explain "'how the . . . error to which he points could have made any difference.'" *Id.* (quoting *Shineski v. Sanders*, 556 U.S. 396, 413 (2009)). "An error is 'harmless' when, despite the technical correctness of an appellant's legal contention, there is also 'no set of facts' upon which the appellant could recover." *Brown v. Astrue*, 649 F.3d 193, 195 (3d Cir. 2011). Although an error may be harmless, we must be mindful that "'[t]he grounds upon which an administrative order must be judged are those upon which the record discloses that its action was based.'" *Fargnoli*,

247 F.3d at 44 n.7 (quoting *Sec. & Exch. Comm'n v. Chenery Corp.*, 318 U.S. 80, 87 (1943)).

The ALJ states in her opinion that she is "not persuaded by the opinions of the consultative examiner," Dr. Saltzgaber, in part because "his assessment is based on a one-time snapshot of the claimant's functioning, including the claimant's subjective complaints, particularly at that time." *Admin. Tr.* at 28.  It is thus evidence that even had the ALJ properly considered Dr. Saltzgaber's objective observations of Emel's pain in conjunction with his other medical findings and her subjective complaints of pain, this would not impact her conclusion that the opinion is unpersuasive.  Dr. Saltzgaber's observation of Emel's distress also occurred during this single examination, and therefore is a part of the "one-time snapshot of the claimant's functioning" at the time of examination. *Id.*  And the ALJ has already found this "one-time snapshot" to be unpersuasive. *Id.*

In sum, though the ALJ erred in her assessment of Dr. Saltzgaber's opinion, any such error was harmless and therefore not a ground to remand.

## VI. Conclusion.

For the foregoing reasons, we will affirm the decision of the Commissioner.

An appropriate order follows.

*__S/Susan E. Schwab__*
Susan E. Schwab
United States Magistrate Judge